# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

RODERICK SKINNER,

     Plaintiff,

v.

MIKE HALEY, et al.,

     Defendants.

Case No.: 3:15-cv-00340-MMD -WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 116

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Renewed Motion for Summary Judgment. (ECF Nos. 116, 117, 117-1 to 117-10.) Plaintiff filed a response. (ECF No. 119.) Defendants filed a reply. (ECF No. 120.)

After a thorough review, it is recommended that Defendants' motion be granted because Plaintiff failed to exhaust available administrative remedies.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), but the alleged events giving rise to this action occurred while Plaintiff was a pretrial detainee at the Washoe County Detention Facility (WCDF). He is proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 6.)  On screening, Plaintiff was allowed to proceed with an Eighth Amendment deliberate difference claim against Nurse Rene Pfister and Nurse Danelli Taylor (referred to in the complaint as "Valentine"). Defendants are former employees of Corizon,

LLC, a private corporation that provided medical care to certain inmates in Nevada. (ECF Nos. 5, 9.)

Plaintiff alleges Defendants were aware he suffered from Crohn's disease; that after a day of symptoms his request to be seen by a doctor was denied; and that his continued requests for treatment due to worsening pain continued to be ignored. As a result of the lack of treatment, Plaintiff alleges he suffered an intestinal rupture, which required surgery and a 21-day hospital stay.

Defendants previously moved for summary judgment. Magistrate Judge Valerie P. Cooke, who was assigned to the case at the time, recommended that summary judgment be granted in Defendants' favor because Plaintiff failed to exhaust his administrative remedies.  (ECF No. 53.) District Judge Miranda M. Du adopted and accepted the report and recommendation. (ECF No. 57.) Plaintiff appealed. (ECF No. 59.) The Ninth Circuit Court of Appeals stated that it was undisputed that Plaintiff did not file a grievance related to his claims; however, it was unclear from the record *when* Skinner was aggrieved sufficiently to trigger the grievance deadline, and if he was, whether he was able to initiate the grievance process due to his illness and subsequent hospitalization, citing *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009). As a result, the Ninth Circuit vacated and remanded for the court to consider these issues. (ECF No. 70.)

The case was subsequently assigned to Magistrate Judge Carly B. Carry upon Magistrate Judge Cooke's retirement. (ECF No. 94.) Then, the case was reassigned to the undersigned as magistrate judge. (ECF No. 96.)

///

///

1    Defendants have filed a Renewed Motion for Summary Judgment arguing:

2    (1) administrative remedies were available to Plaintiff and he failed to exhaust prior to bringing

3    this action; and (2) Defendants were not deliberately indifferent to Plaintiff's serious medical

4    needs.

5                                    **II. LEGAL STANDARD**

6    The legal standard governing this motion is well settled: a party is entitled to summary

7    judgment when "the movant shows that there is no genuine issue as to any material fact and the

8    movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v.*

9    *Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the

10   evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v.*

11   *Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome

12   of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary

13   judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

14   other hand, where reasonable minds could differ on the material facts at issue, summary judgment

15   is not appropriate. *Anderson*, 477 U.S. at 250.

16   "The purpose of summary judgment is to avoid unnecessary trials when there is no dispute

17   as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468,

18   1471 (9th Cir. 1994) (citation omitted); *see also Celotex*, 477 U.S. at 323-24 (purpose of summary

19   judgment is "to isolate and dispose of factually unsupported claims"); *Anderson*, 477 U.S. at 252

20   (purpose of summary judgment is to determine whether a case "is so one-sided that one party must

21   prevail as a matter of law"). In considering a motion for summary judgment, all reasonable

22   inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d

23   805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793

F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587.

Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

## III. DISCUSSION

**A. Exhaustion**

**1. Standard**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies to pretrial detainees. *See Page v. Torrey,* 201 F.3d 1136, 1140 (9th Cir. 2000). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007). Unless the failure to exhaust is clear from the face of the complaint, the defense must be raised in a motion for summary judgment. *See id*. (*overruling in part Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) which stated that failure to exhaust should be raised in an "unenumerated Rule 12(b) motion").

"If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id*., 1168, 1170-71 (citations omitted).

Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate plaintiff did not meet his burden when he failed to identify any actions prison staff took that impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to comply with the administrative remedies process)). The ultimate burden of proof, however, remains with the defendant. *Id*.

The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (emphasis original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford,* 548 U.S. at 90). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

To reiterate, an inmate need only exhaust "available" administrative remedies. *See Ross v. Blake*, 136 S.Ct.1850, 1858 (2016). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. at 1859 (quoting *Booth*, 532 U.S. at 738).

### 2. WCDF Grievance Procedures

WCDF's grievance procedure is set forth in Standard Operating Procedure (SOP) 720.033. It provides: "All inmates will be afforded the right to grieve any and all conditions through a minimum of one level of appeal." "If the inmate is involved in an incident, or has a specific situation they feel is unfair, they may institute the inmate grievance procedure. They will be required to follow each step of the grievance procedure before escalating to the next step." The first step is to attempt to informally resolve the matter with the housing deputy. An oral complaint or informal grievance must be submitted no later than five days from the date of the event. If the concerns are not resolved, the inmate must complete an inmate request form and place it in the grievance box. The inmate should receive a response within seven days. If the situation is still not resolved, the inmate is to submit another inmate request form detailing the previous attempts to resolve the situation. If there is no solution, the inmate may initiate an appeal, which is forwarded to the unit sergeant for a response. If unresolved, the request form will be forwarded to the detention lieutenant. (ECF No. 117-2 at 4-5.)

WCDF Grievance Procedures require inmates to present their oral complaint within five-days of the event, but WCDF's Janit Bailey testified it is common practice to accept an oral complaint even if the five days have elapsed. (Janit Bailey Depo., ECF No. 117-4 at 10, depo. trans. p. 34:9-20.) An inmate may submit a formal written grievance (the second step in WCDF's grievance procedure) at any time. (Janit Bailey Depo., ECF No. 117-4 at 11, depo. trans. p. 35:4-8.)

///

///

**3. Analysis**

The Ninth Circuit directed the court on remand to consider: (1) when Plaintiff was aggrieved sufficiently to trigger the grievance deadline; and (2) even if he was aggrieved, whether Plaintiff was able to initiate the grievance process due to his illness and subsequent hospitalization.

As to when he was aggrieved sufficiently to trigger the grievance deadline, Plaintiff states that the violation was ongoing from August 21-26, triggering the grievance deadline on any one of those days.

Plaintiff alleges Defendants denied or delayed treatment for his Crohn's related abdominal issues between August 21, 2013 and August 26, 2013, and on August 27, 2013, he was admitted to the hospital and received treatment for his condition; therefore, at the latest, he was sufficiently aggrieved as of August 27, 2013.

The question then is whether administrative remedies were then available to him.

In *Marella*, the inmate was attacked by other inmates with a knife. After the attack he spent two days in the hospital, then was moved to the infirmary and after that was placed in administrative segregation. 568 F.3d at 1026. He argued he was unable to obtain and complete a grievance during that time. He filed the grievance following his release, which was 33 days after the knife attack. *Id.* It was denied as untimely. *Id.* He was advised he could appeal if the denial was inaccurate. *Id.* He appealed to the third level of review, and his appeal was denied because he did not submit a second level grievance. *Id.* The district court agreed that the first level grievance was untimely, finding no exceptions to the timelines requirement, and he did not properly appeal through the third level. As such, the district court concluded that the inmate failed to exhaust administrative remedies. *Id.* at 1026-27.

The Ninth Circuit held that the district court erred in finding there were no exceptions to the timely filing requirement. *Id*. at 1027. The court stressed that the inmate was obligated to comply with applicable procedural rules, including deadlines, to properly exhaust administrative remedies. *Id*. (citing *Woodford*, 548 U.S. at 88). The California prison procedures required the grievance to be filed within 15 days. Under the regulations, an appeal could only be rejected if the time limits were exceeded and the inmate did in fact have an opportunity to timely file. *Id*. The Ninth Circuit found that this created an express exception to the timeliness requirement. *Id*.

The Ninth Circuit remanded for the district court to make findings as to whether the inmate had access to the forms and the ability to file a grievance while he was in the hospital and then the infirmary within 15 days of the knife event. *Id*. "If a prisoner had full opportunity and ability to file a grievance timely, but failed to do so, he has not properly exhausted his administrative remedies." *Id*. at 1028 (citing *Woodford*, 548 U.S. at 88).

In this case, the WCDF SOP requires the oral or informal complaint to be made no later than five days from the date of the event. Unlike the procedures in *Marella*, there is no express exception to the timeliness requirement.

Plaintiff was admitted to the hospital on August 27, 2013, and was not discharged until September 11, 2013. Defendants do not argue that Plaintiff had the ability to informally resolve the matter while he was in the hospital, which is when the five-day timeframe would have expired. This is consistent with the SOP, which requires the informal complaint be made to the housing unit deputy. According to Plaintiff he was recovering quietly for two months after he was discharged from the hospital. Defendants assert that it was common practice to accept oral/informal complaints outside the five-day period, and he could have filed his written grievance (the second step in the grievance process) at any time.

9

It appears that Plaintiff did not have the ability to timely complete the first step of WCDF's grievance procedure due to his hospitalization. The court's inquiry does not end there.

In *Marella,* the inmate submitted a grievance, albeit untimely, when he claimed he was able after his stay in the hospital, infirmary and segregation. The Ninth Circuit remanded for the district court to determine if the grievance process was available to him during the fifteen-day time period. *Marella* did not address the scenario presented here: the inmate was unable to timely comply with the first step of the grievance process due to his physical injuries and hospitalization, but at no time attempted to utilize the grievance process to resolve his complaint after he became able to do so.

In *Days v. Johnson*, 322 F.3d 863 (5th Cir. 2003), the inmate plaintiff fell due to water on the floor and broke his hand and required reconstructive surgery, and alleged a failure to protect claim. The Texas correctional department's grievance procedure had two steps: a grievance at the institutional level, and if unfavorable, an appeal to the next level. The inmate claimed at the time of the accident he could not write, and when his hand healed he submitted a grievance that was denied as untimely. He filed suit, and it was dismissed for failing to exhaust administrative remedies. He filed another step-one grievance, that was also denied as untimely. It was returned unprocessed, and this precluded him from proceeding to the second step. *Days v. Johnson*, 322 F.3d 863 (5th Cir. 2003), *overruled in part on other grounds by Woodford v. Ngo*, 548 U.S. 81 (2006).

The Fifth Circuit found there was no evidence the inmate could have timely filed the first level grievance due to his hand injury. *Id*. at 867. The court held: "[A]dministrative remedies are deemed unavailable when (1) an inmate's untimely filing of a grievance is because of a physical injury and (2) the grievance system rejects the inmate's subsequent attempt to exhaust his remedies

based on the untimely filing of the grievance." *Id*. at 868. Other courts within the Ninth Circuit have adopted this approach. *See Carter v. Paramo,* No. 3:17-cv-1833-JAH-AGS, 2018 WL 4579854, at *5 (S.D. Cal. Sept. 25, 2018); *Williams v. California,* No. 17-cv-02511-HSG, 2017 WL 5128007, at *4 (N.D. Cal. Nov. 6, 2017);  *Millner v. Biter,* No. 1:13-cv-02029-AWI-SAB (PC), 2016 WL 888126, at *1 (E.D. Cal. Mar. 9, 2016); *Ollison v. Vargo,* No. 6:11-cv-01193-SI, 2012 WL 5387354, at *2  (D. Or. Nov. 1, 2012); *Baker v. Schriro*, No. CV 07-0353-PHX-SMN (JRI), 2008 WL 622020, at * 5 (D. Ariz. Mar. 4, 2008); *Macahilas v. Taylor*, No. CIV S-06-0502 GEB KJM P, 2008 WL 220364, at *3 (E.D. Cal. Jan. 25, 2008) (administrative remedies unavailable when inmate filed grievance after deadline due to physical illness and it was rejected at all levels as untimely); *Holcomb v. Dir. Of Corr.*, No. C-03-02765 RMW, 2006 WL 3302436, at *6 (N.D. Cal. Nov. 14, 2006).

This holding has been interpreted as requiring an affirmative attempt to exhaust using the administrative procedures before remedies can be considered unavailable. In other words, once an inmate is no longer inhibited by his injury, he is required to file a grievance and be denied before the remedies will be deemed unavailable. *See Looman v. Montana,* No. CV 11-143-M-DWM-JCI, 2012 WL 5287949, at * 3-4 (D.MT Aug. 7, 2012) (under *Days*, "the inmate must file a grievance even if it is untimely" for administrative remedies to be unavailable); *Lipscomb v. Hickey,* No. 1:06-0307, 2009 WL 671398 (S.D.W.Va.. Mar. 10, 2009) (inmate failed to exhaust administrative remedies when she did not file a grievance when she was able following surgery); *Baker v. Schriro*, No. CV 07-0353-PHX-SMN (JRI), 2008 WL 622020, at * 5 (D. Ariz. Mar. 4, 2008) (administrative remedies available where inmate made no attempt to file a grievance when physically able); *Benfield v. Rushton*, No. 8:06-cv-2609-JFA-BHH, 2007 WL 30287, at *4 (D.S.C.

1  Jan. 4, 2007); *Duvall v. Dallas County Texas*, No. 3:05-CV-2431-B, 2006 WL 3487024, at *5

2  (N.D. TX Dec. 1, 2006).

3       Here, accepting the facts in the light most favorable to Plaintiff, he was recovering for two

4  months after his August 27, 2013, surgery; however, at that point, he still did not attempt to utilize

5  the grievance procedures. (P. Depo. ECF No. 117-8 at 15, Depo. Trans. p. 77:16-20.) Plaintiff was

6  aware of the grievance procedures. (Pl. Depo., ECF No. 117-8 at 4, Depo. Trans. p. 34:6-7, 14-

7  16.) Plaintiff even submitted a grievance in January of 2014, that concerned events that took place

8  months earlier, in October of 2013. (ECF No. 117-3 at 2.) Plaintiff does not claim he did not grieve

9  the issue because it was untimely, but because "there was no point" and at that stage "it had already

10 happened" and "nothing was going to change that." (*Id.* at 78:1-13.) The Supreme Court has held,

11 however, that an inmate must exhaust administrative remedies irrespective of the forms of relief

12 sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

13      Therefore, consistent with the authority cited above, because Plaintiff never attempted to

14 avail himself of the prison grievance procedure after he was recovered from surgery and able, it

15 cannot be said that administrative remedies were unavailable to him.

16      As a result, Defendants' motion for summary judgment should be granted on the basis that

17 Plaintiff failed to exhaust available administrative remedies.

18      In light of the court's conclusion, the court need not reach the arguments regarding the

19 merits of Plaintiff's medical care claim. As such, Plaintiff's motion asking the court take judicial

20 notice of the fact that he was a pretrial detainee in August of 2013 (ECF No. 121) should be denied

21 as moot.

22 ///

23

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING** Defendants' motion for summary judgment (ECF No. 116), and **DENYING AS MOOT** Plaintiff's motion for judicial notice (ECF No. 121).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED:  September 26, 2019.

William G. Cobb
United States Magistrate Judge